Gordon G. KNAPP and Norman A. Lebel, Appellants,

v.

Robert G. ANDERSON and Lewis R. Honnen, Appellees.

Patent Appeal No. 8854.

United States Court of Customs and Patent Appeals.

May 17, 1973.

Joseph D. Odenweller, Ferndale, Mich., attorney of record, for appellants. John F. Sieberth, Baton Rouge, La., of counsel.

C. J. Tonkin, San Francisco, Cal., attorney of record, for appellees.

Before MARKEY, Chief Judge, RICH, BALDWIN and LANE, Judges, and WATSON, Judge, United States Customs Court, sitting by designation.

MARKEY, Chief Judge.

This appeal is from the decision of the Board of Patent Interferences awarding priority of invention of the subject matter of counts 1, 3, 4 and 6 to Anderson et al. (Anderson), the senior party. A similar award of counts 2 and 5 has not been appealed.

Anderson is involved on application serial No. 647,632, filed June 21, 1967 which was accorded the benefit of application serial No. 481,916, filed August 23, 1965. Knapp et al. (Knapp) are involved on application serial No. 523,886, filed February 1, 1966.[1] The board found the bench test relied upon by Knapp to demonstrate utility of their

1. The Anderson applications are assigned to Chevron Research Company and the Knapp application to Ethyl Corporation.

compositions inadequate to establish an actual reduction to practice. We affirm.

### The Subject Matter

The invention involved in this interference relates to certain high molecular weight hydrocarbon-substituted amines and lubricating oil compositions containing the same. The primary function of the amine as a lubricant additive is to prevent the deposition of sludge by keeping it dispersed in the lubricating oil. Counts 1 and 4 are representative:

1. A compound of the formula

where R is a hydrocarbon radical having a molecular weight of from about 425 to about 3000 and $R_1$ and $R_2$ are selected from the group consisting of hydrocarbon and hydroxy-hydrocarbon radicals having from 1 to about 10 carbon atoms and hydrogen.

4. A lubricant composition comprising a major amount of a lubricating oil and a minor amount of a compound of the formula

$$R-N\underset{R_2}{\overset{R_1}{\big<}}$$

where R is a hydrocarbon radical having a molecular weight from about 425 to about 3000 and $R_1$ and $R_2$ are selected from the group consisting of hydrocarbon and hydroxy-hydrocarbon radicals having from 1 to about 10 carbon atoms and hydrogen.

Count 3 is directed to the morpholine species of generic count 1 and count 6 to the corresponding lubricant composition.

### The Record

Both parties took testimony. Knapp attempted to establish actual reduction to practice of the subject matter of the counts on appeal prior to August 23, 1965, the filing date of the earlier Anderson application. Anderson, having elected to rely on that filing date, introduced only rebuttal testimony.

### The Board Decision

Priority of conception and preparation of the amines and lubricant compositions containing the same was accorded to Knapp, the board stating:

> We are of the opinion that Knapp et al. have established by a preponderance of the evidence now before us that a composition containing a hydrocarbon substituted amine as defined by counts 1, 3, 4 and 6 was prepared by or on behalf of them prior to the record date of Anderson et al.

The chief inadequacy of the Knapp evidence, in the board's opinion, rested in the sludge dispersancy test, a laboratory test performed to evaluate the usefulness of the amines as dispersants in lubricant compositions.[2] The board found that test not

> * * * sufficient to simulate actual service conditions to such an extent so [sic] as to warrant its acceptance by the industry as a standard and acceptable means of evaluation * * *.

It was also pointed out that there was no evidence of record which might indicate contemporaneous evaluation or reliance upon the test results. Hence the board concluded:

> * * * we are of the opinion that the record does not establish any conviction or appreciation on behalf of

2. In this test a synthetic sludge formed from oxidized lubricating oil and sludge is suspended in lubricating oil containing a minor amount of the test additive and the suspension is then centrifuged. The degree of settling, indicative of non-dispersancy, is measured by determining the light transmittance of the upper layer using a photoelectric cell. Samples containing no additive and a commercially successful dispersant are run as standards.

Knapp et al. that their compositions would operate successfully for their intended or any other purpose.

## OPINION

■ It is well settled that if the counts do not specify any particular use, evidence proving substantial utility for any purpose is sufficient to establish an actual reduction to practice. Blicke v. Treves, 241 F.2d 718, 44 CCPA 753 (1957). Here counts 1 and 3 are directed to the amines per se with no limitation as to use. Although counts 4 and 6 are drawn to *lubricant* compositions containing the amine additives, any use applicable to a lubricant composition would suffice.

■ On this record, we find that the only utility contemplated for the amines is as ashless dispersants in lubricant compositions. The compositions are clearly intended to be used in internal combustion engines. We cannot accept appellants' argument that sufficient utility is demonstrated if the amines are useful for "dispersing sludge" and the compositions are useful for "maintaining sludge in suspension," regardless of the setting or the type of sludge suspended. The record makes it clear that such was not an objective of the Knapp research. On the other hand, advancement to the stage of commercial acceptability is not necessary to establish an actual reduction to practice, so long as the compositions are capable of fulfilling the function for which they were designed. Land v. Regan, 342 F.2d 92, 52 CCPA 1048 (1965).

It was with the aforesaid contemplated utility in mind, i. e. "ashless dispersants * * * for keeping an engine clear and sludge free during operation," that the board approached the sludge dispersancy test used by Knapp. The lack of correlation between that bench test and actual service conditions in a combustion engine, gasoline or diesel, led the board to reject the test as an acceptable standard for evaluating detergent lubricating oils. Instead, the test was described as being "preliminary in nature,

serving only to screen out the most unlikely candidates and thereby limiting the need for the more expensive but reliable engine tests."

■■ We find no error in the board's conclusion. Laboratory testing can be an acceptable means of proving a reduction to practice, but only when a relationship is established between the test conditions and the intended functional setting of the invention. Paivinen v. Sands, 339 F.2d 217, 226–227, 52 CCPA 906, 918 (1964); White v. Lemmerman, 341 F.2d 110, 113, 52 CCPA 968, 972 (1965). The test results must prove that the invention will perform satisfactorily in that intended setting. Knowles v. Tibbetts, 347 F.2d 591, 594, 52 CCPA 1800, 1804 (1965); Koval v. Bodenschatz, 463 F.2d 442, 447, 59 CCPA —— (1972). Here the tests would have had to establish that the lubricant compositions containing the amine sludge dispersants would function as designed during the operation of a combustion engine. From the evidence of record, we are convinced only that the sludge dispersancy bench test demonstrates a limited dispersant characteristic of the amine-containing lubricating oils. This property cannot be equated to and has not been adequately correlated with the contemplated useful function of the compositions.

As pointed out by the board, the testimony of Knapp himself and of O'Neill, the technician who performed some of the sludge bench tests, points the way to a conclusion of inadequate correlation. It clearly does not refute the testimony of witnesses Parker and Fontana of Chevron that there are problems of correlation. Knapp admitted that there were inconsistencies between the bench test and actual service conditions, stating:

> There were some materials that looked good in the bench test that weren't good in the engine, but we don't have any of the reverse, where material looked good in the engine and didn't look good in the bench test.

The bench test doesn't really have all of the ramifications that an engine test does; it's not as severe, and some of the conditions did not exist in the bench test.

He described the test as "preliminary" to eliminate those materials not worth submitting to an engine test. The engine test itself was acknowledged to be "still one removed from a field test." O'Neill agreed that the effectiveness of the dispersant in a combustion engine could not be predicted from the bench test. The test results simply indicated that a "candidate" had been found which was "worthy of testing in an engine test." The Knapp application sets forth later performed engine tests to demonstrate utility.

The board found no evidence of record indicating any conviction of success at the time Knapp's bench tests were conducted. Nor do we. Such an absence of any contemporaneous evaluation or decision to continue work toward a commercially acceptable product can hardly be reconciled with the establishment of utility.

Appellants have introduced into evidence several U. S. patents which set forth various bench tests employed in the industry to demonstrate dispersant utility. None of these tests are identical to the sludge test under consideration. Most employ carbon black rather than a synthetic sludge. None provide any support for the alleged correlation of the Knapp bench test with actual service conditions. On the matter of the tests establishing utility per se, the board correctly pointed out that:

* * * the disclosure necessary to support the patentability of an invention in an application is not necessarily relevant to the degree of proof required to support an actual reduction to practice in an interference proceeding.

Appellants argue that the intention to do further testing to determine commercial feasibility of the products should not negate the reduction to practice as of the time of the bench tests, citing Rimbach v. Wanmaker, 362 F.2d 561, 53 CCPA 1552 (1966). Here, contrary to the situation in *Rimbach*, the invention had not been tested under laboratory test conditions to the extent that utility would be known to those of ordinary skill in the art. Only a potential utility had been established. It was not merely a question of commercial development.

The circumstances of this case are also distinguishable from those in the recent case of Campbell v. Wettstein, 476 F.2d 642 (Cust. & Pat.App.1973). In *Campbell* the record failed to support the board's conclusion that the particular tests there conducted were insufficient to establish anti-fertility activity. Those laboratory tests actually demonstrated in test animals the pharmacological activity being relied upon for utility and did not merely narrow the field to candidates worthy of further testing.

In conclusion, we find that appellants have failed to establish actual reduction to practice of the subject matter of the counts by a preponderance of the evidence. The decision of the board is *affirmed*.

Affirmed.